**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.:  1:03-CR-53-TS |
| | ) | |
| TIMOTHY REDD | ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Timothy Redd's Petition for Post-

Conviction Relief under 28 U.S.C. § 2255 [DE 287], filed on November 20, 2006. The

government responded on March 12, 2007, and the Defendant replied on April 9. In connection

with his Petition, the Defendant has also requested appointment of counsel [DE 290] and an

evidentiary hearing [DE 301].

**BACKGROUND**

The Defendant, Timothy Redd, was charged with conspiring with Co-Defendants

Lavonte Nunnally and Thomas Dauksza-Brzinski to distribute crack cocaine from about June

2003 to July 8, 2003 (Count 1). The government also charged the Defendant with two counts of

possessing with intent to deliver crack cocaine (Counts 2 & 3); using an automobile as a

dangerous and deadly weapon to forcibly assault, resist, oppose, impede, intimidate, and

interfere with a law enforcement agent who was engaged in his official duties (Count 4);

possessing a firearm in furtherance of a drug trafficking crime (Count 5); and transporting in

interstate commerce a firearm after being convicted of a felony (Count 6).

The Defendant retained Attorney Leslie Starks, who represented him through the pre-trial

and trial phases of this case. When the Defendant could no longer afford to pay Starks, he moved

for appointment under 18 U.S.C. § 3006A. On January 15, 2004, the Court appointed Starks as counsel for the Defendant *nunc pro tunc* to August 18, 2003. Attorney Starks filed numerous pre-trial motions on behalf of the Defendant: Motion for Bill of Particulars; Motion to Sever; Motion to Continue Trial; Motion in Limine to preclude use of audio and video recordings; Motion to Dismiss Counts 5 and 6 of the Superceding Indictment; and Motion in Limine regarding transcript of recordings. He also filed responses to the government's notice of intent to use intricately related evidence and/or Rule 404(b) evidence, the government's motion in limine, and the government's *Santiago* Proffer.

The trial in this matter began on March 9, 2004. Co-Defendants Nunnally and Brzinski, who had already pled guilty, were among the government witnesses. These witnesses testified that Nunnally would call the Defendant for crack cocaine, the Defendant would deliver it to Nunnally, and Brzinski would distribute it. Nunnally paid Brzinski for his role in making deliveries and collecting money from buyers. Nunnally or Brzinski would pay the Defendant for the crack after they sold it. On one occasion, Brzinski called the Defendant directly using Nunnally's phone. The witnesses also testified about two particular sales to Joseph Broyles on July 8, 2003. For the first sale, Brzinski saw the Defendant give crack cocaine to Nunnally. Nunnally, in turn, gave the drugs to Brzinski who was to deliver them to Broyles, get money from Broyles, and deliver the money to Nunnally, who would give it to the Defendant. During the second transaction, police arrested Brzinski after he delivered the drugs to Broyles. Brzinski agreed to cooperate with the police and to call Nunnally and the Defendant. Nunnally was arrested as a result of Brzinski calling him for the pretextual purpose of delivering more crack. Brzinski then obtained the Defendant's phone through Nunnally's phone. Brzinski called the

Defendant to set up a meeting to deliver money from the sale of drugs and to pick up more drugs.

After the presentation of evidence, Attorney Starks moved for judgment of acquittal. On March 15 a jury returned guilty verdicts as to Counts 1, 2, 3, and 4 and not guilty verdicts for the gun charges, Counts 5 and 6 of the Superceding Indictment. The Defendant, through Attorney Starks, moved for a new trial, asserting a wide variety of trial defects. The Court denied the motion for new trial and the case proceeded to sentencing.

Before sentencing, Attorney Starks filed objections to the presentence investigation report and moved for a new presentence report that would be consistent with *United States v. Booker*, 543 U.S. 220 (2005). On May 26, 2005, the Defendant requested new counsel. Attorney Thomas N. O'Malley was appointed to represent the Defendant and did so during sentencing and on appeal.

Upon consideration of the Presentence Investigation Report, the evidence submitted at trial, and the argument presented at his sentencing hearing, the Court made factual determinations by a preponderance of evidence and sentenced the Defendant to 405 months imprisonment, the maximum of the applicable guideline range.

The Defendant filed an appeal. However, Attorney O'Malley moved to withdraw because he could not discern a nonfrivolous basis for the appeal and filed an *Anders* Brief in support of his motion to withdraw. *See Anders v. California*, 386 U.S. 738 (1967).  The court of appeals invited the Defendant to comment on his counsel's motion and he filed a response. On March 7, 2006, the Seventh Circuit granted the motion to withdraw and dismissed the appeal.

The Defendant now seeks to reverse his conviction and be granted a new trial. The

government, in its response, argues that none of the claims asserted by the Defendant provide a basis for collateral relief. The government has not presented any argument regarding procedural default or waiver.

## ANALYSIS

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence. This relief is available only in limited circumstances, such as where an error is jurisdictional, of Constitutional magnitude, or there has been a "complete miscarriage of justice." *See Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004).

The Defendant asserts that he is entitled to habeas relief for various wrongs that were committed by the Court and his counsel in the pretrial and trial phases, at sentencing, and on appeal. He maintains that his telephone number was illegally obtained from Nunnally's cell phone, that the government used illegal tape recordings and wire taps, that the confidential informants and government witnesses were not credible, that co-defendant's statements were erroneously admitted, that the prosecution made prejudicial statements during closing argument, and that the Court improperly sentenced him. Some of these purported errors are also presented as proof that his trial counsel rendered ineffective assistance. The Defendant claims that his trial counsel was ineffective for the following reasons: (1) he did not have the Defendant evaluated even though he had been on disability for a mental disorder for eight years prior to his arrest; (2) he failed to file a motion to dismiss the indictment on grounds that false testimony was presented to the grand jury; (3) he had little or no knowledge of federal law and rarely sent him information pertaining to his case; (4) he did not realize that a potential juror, Charles Belknap,

was partial; (5) he did not establish that exclusion of African-Americans from the venire was due to their systematic exclusion from the jury process; (6) he did not establish the necessary proof for a new trial based on perjured testimony; (7) he failed to object to photographs introduced at trial; (8) he did not subpoena Joseph Broyles as a trial witness; (9) he did not file a motion to suppress Nunnally's cell phone; (10) he did not object to improper remarks made by the prosecution regarding his character; (11) he did not impeach prosecution witnesses using their prior inconsistent statements; and (12) he did not allow the Defendant to testify.

The Defendant claims that counsel was ineffective at sentencing for failing to offer his mental disorder as a mitigating factor.

The Defendant complains that his appellate counsel rendered ineffective assistance when he filed an *Anders* brief.


**A.      Recovery of His Telephone Number from Co-Defendant Nunnally's Cell Phone**

When police arrested Co-Defendant Nunnally on July 8, 2003, they seized his cell phone. Police then arranged for Brzinski to find the Defendant's phone number from the index of numbers on Nunnally's phone and call the Defendant to set up a meeting. The Defendant alleges that the seizure of Nunnally's phone was a violation of his and Nunnally's Fourth Amendment rights, that his trial counsel was ineffective for failing to file a motion to suppress it, and that the Court erred in not suppressing it.

The Defendant does not have standing to challenge the seizure of another person's property. "Fourth Amendment rights are personal and cannot be asserted vicariously." *Bond v. United States*, 77 F.3d 1009, 1013 (7th Cir. 1996) "An individual can urge suppression of

evidence only if *his* Fourth Amendment rights were violated by the challenged search or seizure; it is not enough that a person is aggrieved by the introduction of damaging evidence derived from the search." *Id.* (citing the need for a legitimate expectation of privacy for a Fourth Amendment violation).

The Court did not err in failing to suppress the evidence obtained as a result of the government's seizure of Nunnally's telephone and search of its contents, including the Defendant's telephone number. Any motion that the Defendant's attorney would have made to suppress this evidence would have failed. "Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996). The introduction of evidence derived from the seizure of Nunnally's phone does not provide a basis for collateral relief.

### B.      Tape Recordings and Wire Taps

Co-Defendant Brzinski, who was cooperating with police, placed telephone calls to the Defendant using the phone number he retrieved from Nunnally's seized phone. Police taped these conversations between Brzinski and the Defendant. The Defendant challenges the introduction of the recorded phone calls. His argument appears to be an extension of his Fourth Amendment claim against the seizure of Nunnally's phone. He submits that, since Nunnally did not give police consent to search his cell phone index, his phone number was illegally obtained. Thus, he argues, the conversations Brzinski had with him at that phone number should not have been recorded and used as evidence against him because they were fruits of the poisonous tree.

The same reasons that doom the Defendant's challenge to the seizure of Nunnally's

6

phone apply to this claim and it does not provide an adequate basis for granting the petition.

**C.      Credibility of Confidential Informants and Government Witnesses**

The Defendant argues that the trial record shows that Co-Defendant Brzinski admitted to "falsifying information to agents, misleading agents, lying and confusing the jury." (Pet. at 15.) The main thrust of the Defendant's argument is that because Brzinski did not deal directly with the Defendant, but only with Co-Defendant Nunnally, he could not testify accurately and truthfully to the conspiracy. He maintains that Brzinski only said what the government wanted to hear so he could get a lower sentence. He also states that he was entitled to questions Brzinski about his potential bias, including the prospect that his testimony would result in a lower sentence.

> The law applicable to the knowing use of perjury at trial is settled. A criminal conviction procured by the use of testimony known by the prosecuting authorities to be perjured and knowingly used by them in order to procure a conviction does not comport with due process of law and is violative of a defendant's constitutional rights. The knowing use by the Government of perjured testimony in order to obtain a conviction would, if proved, be grounds under section 2255 for vacation of a conviction under circumstances such as exist here where the petitioners assert that they were unaware of the alleged perjury both at the time of the trial and the appeals. A defendant has the burden of making a showing, not only that material perjured testimony was used to convict him, but that it was knowingly and intentionally used by the prosecuting authorities to do so. Mere inconsistencies or conflicts between the testimony of a witness or witnesses are not enough. "Trivial conflicts in testimony . . . do not constitute perjury. . . . Those experienced in the trial of cases realize that it is a common occurrence to have some conflicts in the testimony of witnesses, and that any conflict in itself is not a signpost of perjury." More than "immaterial inconsistencies" are required for perjury.

*Anderson v. United States*, 403 F.2d 451, 454 (7th Cir. 1968) (citations omitted).

The Defendant's challenge to Brzinski's testimony fails on several grounds. First, in the

testimony cited by the Defendant in his Petition, Brzinski clearly identifies his role in the conspiracy, admits that he did not normally deal directly with the Defendant, explains that he lied to police when he was first arrested, and acknowledges that he expected to receive a reduction in his sentence in exchange for pleading guilty and testifying at trial. Defense counsel's cross examination of Brzinski was consistent with *United States v. Arocho*, 305 F.3d 627, 636 (7th Cir. 2002), which held that a district court may limit cross-examination to exclude mention of specific sentences where a defendant is otherwise able to elicit adequate evidence to allow the jury to assess a witness's credibility, motives and bias.

Second, although the Defendant points to what he believes is an inconsistency, the Defendant does not actually provide any evidence that Brzinski's testimony was untruthful or constitutes perjury. The Defendant highlights Brzinski's testimony where he recounts the interaction (exchange of drugs) that he witnessed between Nunnally and the Defendant on July 8, 2003, but did not speak directly to the Defendant. The Defendant argues that Brzinski's testimony that he did not talk to the Defendant contradicts other testimony that he once called the Defendant himself using Nunnally's phone. The Defendant has not proven any inconsistency in these statements, much less that material perjured testimony was knowingly and intentionally used by the prosecuting authorities to convict him. Brzinski was talking about two different events. Brzinski's testimony, as a whole, portrayed that his direct dealing with the Defendant was an exception to his usual role in the conspiracy delivering drugs for Nunnally.

Pointing out the weaknesses in Brzinski's testimony, weaknesses that were revealed to the jury, does not establish a basis for the requested relief. The jury was able to assess Brzinski's credibility, motives, and bias. There is nothing in the record that suggests Brzinski perjured

himself at trial, that the government was aware of any such perjury, or that his testimony resulted in a complete miscarriage of justice.[1]

### D.        Admission of Co-Defendant's Statement

The Defendant argues that the admission at trial of Brzinski's statements to police constitutes a *Bruton* violation. In *Bruton v. United States*, 391 U.S. 123, 135–36 (1968), the Supreme Court held that in a joint trial of two defendants, a confession of one co-defendant who did not testify could not be admitted into evidence even with a limiting instruction that the confession could only be used against the confessing defendant. Because Brzinski testified at trial, the holding of *Bruton* is not implicated in this case. *See United States v. Chrismon*, 965 F.2d 1465, 1469 (7th Cir. 1992) (emphasizing that *Bruton* problem is avoided where the out-of-court statement is made by a declarant who testifies at trial and is available for cross-examination).

### E.        Prosecutor's Statements During Closing Argument

The Defendant contends that his counsel allowed government counsel to "comment about the defendant, based on evidence that did not exist, hear-say information, the prosecutor's personal opinion and allowed the prosecutor to present his personal beliefs . . . in the presence of the jury." (Pet. at 22.) The only specific example the Defendant offers of the contents of an

---

[1] The Court notes that the government did not rely solely on the testimony of Brzinski to establish that the Defendant was involved in a conspiracy to distribute drugs. The jury also heard evidence from another co-conspirator, who did deal directly with the Defendant, an undercover agent, and police. The jury also heard taped telephone conversations the Defendant had with his co-conspirators and the confidential informant.

improper statement is that government counsel referred to a firearm that was not in evidence.

Because the Defendant fails to point to the specific statements that he avers are improper, it is proper for the Court to dismiss this claim on the basis of its conclusory nature. As to the firearm, the Defendant was charged with possession of the firearm and an eye witness testified to the Defendant's possession of it and, thus, it was proper for the prosecutor to address it. Because the Defendant has not established that this claim has any merit, it was not, as he argues, ineffective assistance of counsel for his lawyer to fail to object to the prosecutor's comments.

## F.      Sentencing

At the Defendant's sentencing hearing, the Court found by a preponderance of the evidence that the Defendant possessed a dangerous weapon and added two points to his base offense level under U.S.S.G. § 2D1.1(b)(1). The Court found that testimony from Agent Lucas regarding the firearm bore a "sufficient indicia of reliability to support its probable accuracy." *United States v. Taylor*, 72 F.3d 533, 543 (7th Cir. 1995).

The Defendant believes that his sentence was improper because the Court found that the Defendant possessed a firearm even though the jury acquitted him of the gun charges. The Defendant also charges that it was vindictive for the prosecutor to request the firearm enhancement.

### 1.      *Sentencing Court's Factual Findings*

The calculation of the advisory guideline range is no different than it was before *Booker* and requires district judges to "resolve disputed factual issues, see Fed. R. Crim. P. 32(i)(3)(B);

10

U.S.S.G. § 6A1.3(b) (2004), determine relevant conduct by a preponderance of the evidence, and apply the appropriate sentence enhancements in order to compute the advisory guidelines sentence range." *United States v. Robinson*, 435 F.3d 699, 700–01 (7th Cir. 2006). A sentencing judge is required to resolve factual disputes that are essential to a properly calculated guideline range. *Robinson*, 435 F.3d at 702 (remanding case to district judge for determination of factual issue). Because a lower standard is used for factual findings under the guidelines, facts may be used to calculate the guideline range even if a jury found the defendant not guilty of the conduct. *United States v. Gee*, 226 F.3d 885, 898 (7th Cir. 2000) (stating that because sentence calculations require a lower standard of proof than criminal convictions a sentencing court is allowed to include acts or omissions in its sentencing calculations even if the jury acquitted the defendant on those acts or omissions). The verdict did not foreclose the Court's finding and the Defendant has not established grounds to vacate his sentence.

The Defendant also argues that, under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), it was improper for the court to enhance his sentence for possession of a firearm where the jury found him not guilty of the firearm charges. *Apprendi* holds that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," 530 U.S. at 490. "[W]hen a defendant is sentenced to a term of imprisonment within the statutory maximum for the crime of which he was convicted, '*Apprendi* is beside the point.'"*United States v. Williams*, 238 F.3d 871, 877 (7th Cir. 2001) (quoting *Talbott v. Indiana*, 226 F.3d 866, 869 (7th Cir. 2000)).

The Defendant has not established that he was sentenced above the statutory maximum.

11

Therefore, his sentence did not implicate *Apprendi*, did not violate the Constitution, and is not grounds for habeas relief.

### 2.    *Prosecutor Vindictiveness*

A person cannot be punished "because he has done what the law plainly allows him to do." *United States v. Goodwin*, 457 U.S. 368, 372 (1982). Therefore "vindictive" prosecutions, which are undertaken in retaliation for the exercise of a legally protected statutory or constitutional right are forbidden. *Id.* The Defendant does not attempt to show that the government sought to increase his base offense level in response to his exercise of constitutional or statutory rights. The Defendant's claim of vindictive prosecution amounts to bare speculation and does not support habeas relief.

### G.    Ineffective Assistance

In seeking to prove that his counsel rendered ineffective assistance, the Defendant "bears a heavy burden." *Jones v. Page*, 76 F.3d 831, 840 (7th Cir. 1996) (citation omitted). To establish ineffective assistance of counsel, a petitioner must show that: (1) his attorney's performance "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984); and (2) there is a reasonable probability that "but for counsel's unprofessional errors the result of the proceeding would have been different," *Id.* at 694. *See also Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) (applying *Strickland* test to claim that appellate counsel rendered ineffective assistance). "A failure to establish either prong results in a denial of the ineffective assistance of counsel claim." *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002) (citation

omitted).

The performance prong requires the Defendant to specifically identify acts or omissions that form the basis of his claim of ineffective assistance. *Strickland*, 466 U.S. at 690. Based on the totality of the circumstances, the Court must then determine whether the identified acts and omissions fall outside the range of professionally competent assistance. *Id.* The prejudice prong requires the Defendant to show that his trial counsel's errors are so serious as to render his trial fundamentally unfair or unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 368–69 (1993).

"Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).

**1.     *Evaluation***

The Defendant argues that both his trial and appellate counsel were ineffective for failing to get an evaluation of his mental health. The Defendant presents documents that show he receives social security disability benefits for a "permanent organic mental disorder." It is not clear whether the Defendant is claiming that his counsel failed to investigate his disorder, or whether, knowing about it, they acted unreasonably by deciding not to address it with the court before trial and at sentencing. The Court will address both as possible grounds for collateral relief.

If the Defendant is alleging that counsel rendered ineffective assistance by failing to investigate, he has the heavy "burden of providing . . . a comprehensive showing as to what the investigation would have produced." *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (citation marks omitted). The Defendant has not done this. He does not address the nature

of his disorder, its severity, its symptoms, its impact on his behavior, or its relevancy otherwise. The fact, standing alone, that he has an organic mental disorder is of little consequence.

If the Defendant is claiming that counsel acted outside the range of professionally competent assistance when he did not present his disorder as a defense and request a competency evaluation, his claim also falls short. The Defendant does not indicate how this information would have helped his defense. He does not suggest, much less provide a sworn affidavit, that his disorder rendered him unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. *See* 18 U.S.C. § 4241. He does not point to anything in the trial record or the sentencing proceedings that would have created doubt concerning his mental capacity. Because he does not provide any specific information about his disorder, he does not establish a reasonable probability that an evaluation would have resulted in an acquittal or a lower sentence.

Because the Defendant does not present any evidence of the actual affliction and its effect on him, or counsel's decisions as they related to their understanding of his disorder, the Defendant cannot establish that his lawyers were ineffective for failing to request a competency evaluation or present his disorder in mitigation of punishment.[2]

**2.** *Motion to Dismiss Indictment*

The Defendant argues that his counsel should have moved to dismiss the indictment because false testimony was presented to the grand jury. The Defendant does not support his

---

[2] The Defendant spends numerous pages in his Reply attacking the propriety of the prosecution's opinion about his competency. However, the Defendant misunderstands the government's use of a quotation from a different district court case to be the prosecutor's statement about this case.

claim with any evidence that the grand jury was presented with, and relied on, false testimony. The Defendant's bare assertions of false testimony do not meet either prong of *Strickland*.

**3.      *Knowledge of Federal Law, Lack of Communication, Conflict***

The Defendant argues that his attorney, who practiced in state court in Illinois, had "little to no knowledge of federal law" and did not keep him informed about his case. (Pet. at 3.) He also argues that his counsel was not loyal as soon as he "ran out of money." (Pet. at 7.) These general allegation does not satisfy *Strickland*; the Defendant does not establish that his attorney's performance fell below an objective standard of reasonableness or that there is a reasonable probability that but for counsel's errors the result of his case would have been different. Bald allegations of prejudice are insufficient to demonstrate ineffective assistance of counsel. *Barkauskas v. Lane*, 946 F.2d 1292, 1295 (7th Cir.1991). Moreover, the record demonstrates that Attorney Starks filed numerous pretrial, trial, and post trial motions in the interest of his client. It also shows that even when the Defendant could no longer afford to retain him, Attorney Starks requested to be appointed as CJA counsel and continued to diligently represent the Defendant.

**4.      *Jury Selection***

The Defendant submits that counsel was ineffective for failing to realize that a potential juror, Charles Belknap, was not impartial. He also blames his counsel for not being able to establish that exclusion of African-Americans from the venire was due to their systematic exclusion from the jury process and, thus, a violation of his Sixth Amendment rights.

In its order denying the Defendant's motion for new trial, the Court stated:

The Sixth Amendment requires that jurors be chosen from a fair cross-section of the community. *Taylor v. Louisiana,* 419 U.S. 522, 530 (1975). However, there is no requirement that a venire or jury mirror the general population. *United States v. Duff,* 76 F.3d 122, 124 (7th Cir.1996). To establish a prima facie case that the "fair cross-section" requirement has been violated, a defendant must show that (1) the excluded group is a distinctive part of the community, (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (3) the underrepresentation is due to a systematic exclusion of the group in the jury selection process. *Duren v. Missouri,* 439 U.S. 357, 364 (1979); *Johnson v. McCaughtry,* 92 F.3d 585, 590 (7th Cir.1996).

The Defendant has not satisfied the *Duren* standard and, in fact, has not attempted to meet the elements of a prima facie violation. Without evidence about the total representation of African-Americans in the community from which the venire was drawn, there is no way to determine whether the representation in the venire was not fair and reasonable. Without proof that the distinctive group at issue is under-represented, the Court cannot determine that such a group was excluded from the jury-selection process. Accordingly, the Defendant has not demonstrated that he was deprived of his Sixth Amendment right to a jury pool representing a fair cross-section of the community and has not provided a basis for a new trial.

(DE 185 at 2–3.) On appeal, the Seventh Circuit held that it would have been frivolous to argue that the Court's denial of the motion for new trial was erroneous.

In his Petition, the Defendant does not present any evidence that the jurors were not chosen from a fair cross-section of the community and that African-American were under-represented. Therefore, he does not establish that it was unreasonable for his counsel to fail in this endeavor. Counsel cannot be faulted for failing to prove what cannot be proven.

As to Belknap, the Court thoroughly questioned him to determine his ability to be an impartial juror during the trial and determined that there was no cause to strike him. The Defendant contends that his counsel was ineffective for failing to see his prejudice, but does not establish that he was, in fact, biased. The Defendant cannot establish that merely because Belknap worked for the Civil Air Patrol looking for drug crops to report to authorities, that he

16

could not be fair and impartial to the Defendant. The Court specifically questioned Belknap on

this issue. "[A] trial court 'is not required to excuse any juror on the basis of his occupational

background so long as the court is able to conclude that the juror would be able to view the

evidence with impartiality and to decide the case without bias.'" *United States v. Nururdin*, 8

F.3d 1187, 1191 (7th Cir. 1993) (quoting *United States v. Maldonado-Rivera*, 922 F.2d 934,

970–71 (2d Cir. 1990)). Neither does the Defendant establish a reasonable probability that, had

Mr. Belknap been stricken from the jury, the outcome of his trial to the twelve-person jury would

have been different.


### 5.      *Perjured Testimony—Motion for New Trial*

To receive a new trial on the basis of the government's use of allegedly perjured

testimony, the Defendant must establish that: (1) the government's case included perjured

testimony; (2) the government knew, or should have known, of the perjury; and (3) there is a

likelihood that the false testimony affected the judgment of the jury. *Simental v. Matrisciano*,

363 F.3d 607, 615 (7th Cir. 2004); *United States v. Saadeh,* 61 F.3d 510, 523 (7th Cir. 1995).

The Defendant believes that his counsel did not put forth the appropriate effort to

establish that a new trial was warranted on the basis of perjured testimony. He recognizes that

his counsel "did not establish the first prong of the three part test let alone that the government

knew or should have known of perjured testimony" and that, for this reason, he motion for new

trial was denied. (Pet. at 4–5.) However, the Defendant does not indicate what his counsel could,

or should, have done to establish the need for a new trial on the basis of perjured testimony. He

does not offer any evidence that the testimony was, in fact, perjured, that the government knew

about the perjury, or that the false testimony likely affected the judgment of the jury. Again, his counsel cannot be faulted for failing to offer proof where none existed.

**6.      *Photographs***

The Defendant argues that his counsel was ineffective when he failed to object to the admission of photographs of the Defendant until after they were already admitted and published to the jury. The Defendant does not indicate on what grounds the photographs were objectionable. The Defendant does not establish a reasonable probability that if he lodged a timely objection, the Court would have sustained his objection and the jury would have found him not guilty of conspiring to distribute drugs.

**7.      *Joseph Broyles as a Trial Witness***

The Defendant maintains that his counsel provided ineffective assistance when he did not call Joseph Broyles to testify to impeach Brzinski's testimony. The Defendant claims that his counsel "failed to call the one eyewitness that could help his client." (Pet. at 25.) The Defendant does not indicate what Broyles might have said if he testified.

The Defendant does not develop the record regarding Attorney Stark's tactics. The Court must presume that not calling Broyles was a strategic decision that cannot be second guessed on collateral attack. *See Strickland*, 466 U.S. at 689 (noting that a reviewing court must indulge a strong presumption that the challenged actions at trial were sound trial strategy and, therefore, not evidence of ineffective assistance); *Barnhill v. Flannigan*, 42 F.3d 1074, 1078 (7th Cir. 1994) ("Usually, counsel's decision not to call a witness is a tactical decision not subject to

18

review."). The Defendant has not established that his counsel failed to use reasonable professional judgment when he decided not to call Broyles to testify.

Second, the Defendant has not established a reasonable probability that this evidence would have had any effect on the outcome of his trial. The Defendant does not present Broyles's affidavit to establish what he might have said or how it would have rebutted the testimony of Co-Defendants Nunnally and Brzinski, an undercover DEA Task Force Agent, and police officers that supported the conviction for conspiracy to distribute drugs.

**8.**   ***Counsel Advised the Defendant Not to Testify***

The Defendant contends that his counsel provided ineffective assistance when he refused to allow him to testify at trial. He does not provide any substantiating evidence in support of his claim that Attorney Starks forbid him to testify. In addition, the Defendant does not indicate, by affidavit or other sworn document, what his testimony would have been or how it would have been beneficial to his defense.

In *Underwood v. Clark*, 939 F.2d 473, 475–76 (7th Cir. 1991), the court stated that a defendant's "barebones assertion" in an affidavit that his counsel denied him the opportunity to testify at trial despite his request to do so did not warrant a hearing or other court action.

> It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary—and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify—to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

*Underwood*, 939 F.2d at 476. The Defendant has not provided the necessary particularity or substantiation.

Moreover, "[t]he decision not to place the defendant on the stand is a classic example of what might be considered sound trial strategy." *United States v. Norwood*, 798 F.2d 1094, 1100 (7th Cir. 1986) (holding that because calling the defendant to the stand would have permitted the government to bring his prior conviction before the jury, counsel's decision not to have him testify "clearly should be considered sound trial strategy"). In taking the stand, the Defendant could have opened the door to impeachment, including the use of his prior felony convictions.

Collateral relief is not available to the Defendant on this ground.

**9.**      *Appellate Counsel Filed an* **Anders** *Brief*

The Defendant submits that his appellate counsel rendered ineffective assistance when he filed an *Anders* brief on appeal, particularly without notifying him.

Although the "filing of an *Anders* brief that fails to point out meritorious issues can, in principle, constitute ineffective assistance" *Steward v. Gilmore*, 80 F.3d 1205, 1213 (7th Cir. 1996), the Defendant has not pointed to any such meritorious issues. His claim that counsel rendered ineffective assistance when he filed an *Anders* brief is without merit.

**H.      Evidentiary Hearing**

A court need not grant an evidentiary hearing in all § 2255 cases. *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001). While a court must grant a hearing if the petitioner alleges facts that, if proven, would entitle him to relief, no hearing is required where the record conclusively shows that the defendant is entitled to no relief. *Id.*; *see also Galbraith v. United States*, 313 F.3d 1001, 1009–10 (7th Cir. 2002) (stating that the threshold determination that a

petition has alleged facts that would justify a hearing require the petitioner to submit a sworn affidavit showing what specific facts support his assertions). The Defendant does not indicate what facts an evidentiary hearing would reveal, much less support any such assertions with a sworn affidavit.

> It is the rule of this Court that in order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions. Mere unsupported allegations cannot sustain a petitioner's request for a hearing.

*Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996) (citations, quotations marks, and brackets omitted).

The Petition does not support the Defendant's request for an evidentiary hearing. The Defendant has not offered the Court any objective facts outside the record that would warrant a hearing. Moreover, the record and history of this case demonstrate that he is not entitled to relief.


**I.      Appointment of Counsel**

18 U.S.C. § 3006A provides for appointment of counsel to a financially eligible person who is seeking relief under § 2255 where "the court determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B); *see also Winsett v. Washington*, 130 F.3d 269, 281 (7th Cir. 1997) (stating that appointment of counsel in habeas corpus cases is a power commended to the discretion of the district court in all but the most extraordinary of circumstances). An exception to the court's discretion to appoint counsel exists when an evidentiary hearing is required; in that circumstance, the court must appoint counsel. See Rule 8(c), Rules Governing Section 2254 Cases in the United States District Courts.

Because the Defendant does not offer any meritorious issues that would require an evidentiary hearing, appointment of counsel is not mandatory. Further, the Court finds that the interests of justice do not support appointment of counsel in this case. The issues presented in the Defendant's habeas petition are not novel and do not require particularly complex or detailed legal research. Moreover, the Defendant's submissions, including a thirty-two page brief complete with citations to legal standards, cases, and transcript pages, have been competently written and argued to an extent that suggests he is capable of presenting his own case.

**CONCLUSION**

For the foregoing reasons, the Defendants Petition for Post-Conviction Relief Under 28 U.S.C. § 2255 [DE 287],  Motion for Appointment of Counsel [DE 290], and Motion for Evidentiary Hearing [DE 301] are DENIED.

SO ORDERED on June 11, 2007.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT